NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0084n.06

No. 22-5307

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 13, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MONTRELL KILPATRICK,<br>    Plaintiff - Appellant,<br><br>v.<br><br>HCA HUMAN RESOURCES, LLC<br>    Defendant - Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE<br><br>OPINION |

Before: SUTTON, Chief Judge; BUSH and MURPHY, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** After Montrell Kilpatrick was fired by HCA Human Resources (HCA), he sued his former employer for discrimination and promoting a hostile work environment. Kilpatrick asserts he was terminated because he came out as gay. HCA defends by stating that it terminated Kilpatrick for misreporting tuition reimbursement information for his ongoing graduate school program. The district court granted summary judgment to HCA. Because HCA has offered a valid non-discriminatory reason for terminating Kilpatrick that is not pretextual, we AFFIRM.

I.

Montrell Kilpatrick worked at HCA from November 2014 to March 2016. Kilpatrick agrees he did not experience discrimination until December 2015. Around that time, he revealed to a high-level official at HCA that he is gay.

According to Kilpatrick, his coming out led to two things. First, his supervisor issued written criticism of his past errors even though they had been corrected, although HCA asserts job

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

performance was not a factor in Kilpatrick's termination. Kilpatrick also experienced alleged harassment after he disclosed his sexual orientation, including receiving "pink nail polish, a nail file, and bath bombs," and seeing Bible verses on post-it notes stuck to his desk. And he claims he was moved to an isolated corner of the office. Together, Kilpatrick asserts, these problems amount to a hostile work environment.

Second, HCA engaged in closer scrutiny of Kilpatrick's requests for reimbursement for his course of study at Concordia University, and this scrutiny led to his termination. In February and April 2015, Kilpatrick submitted requests for tuition reimbursement, which were approved. But on December 30, 2015 (after he came out as gay), Kilpatrick submitted another request for tuition reimbursement, which was denied. Human Resources manager Tina Norris stated the denial was because Kilpatrick did not receive approval before the semester started. Kilpatrick asked HCA to reconsider, leading HCA staff to review his previous requests. The review identified discrepancies in reported course start and end dates. These discrepancies caused HCA to question the legitimacy of Kilpatrick's educational program. In January and February 2016, HCA asked Kilpatrick for more documentation related to prior reimbursement requests. One of the documents submitted to HCA appeared to be manipulated, depicting a screenshot of an account page for another student with the name removed. HCA also discovered other educational reimbursement documents that appeared to show editing of the account balance using software called Snipping Tool; Kilpatrick's emails revealed versions before and after editing. HCA asserts that these issues reflect "altered education documents," "discrepancies," and "false alterations"—perhaps even fraud. Appellee's Br. at 14, 34. Kilpatrick contends that earlier versions were "drafts," that he provided the other student's document for benign reasons, and that the dates he gave were consistent with HCA

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

policies at the time of submission (even if barred by later policies). In any event, HCA claims that it held an honest belief that Kilpatrick submitted false documents.

## II.

The district court originally granted summary judgment to HCA, but we reversed the judgment as to discrimination based on sexual orientation in light of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and remanded. *Kilpatrick v. HCA Human Res., LLC*, 838 Fed. Appx. 142, 147 (6th Cir. 2020). The district court subsequently granted summary judgment to HCA with regard to Kilpatrick's discrimination and hostile-work-environment claims. On appeal, we consider whether he has raised a genuine issue of material fact to avoid summary judgment on these two claims.

## III.

We review a grant of summary judgment de novo. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish a genuine issue of material fact, there must be more than "a scintilla of evidence" on behalf of the non-moving party, *Stanley v. FCA US, LLC*, 51 F.4th 215, 218 (6th Cir. 2022), such that "a fair-minded jury could return a verdict for" that party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "In determining 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,' this Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (quoting *Anderson*, 477 U.S. at 251–52, 255).

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

IV.

A. <u>Discrimination Based on Sexual Orientation</u>

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). In *Bostock*, the Supreme Court held that Title VII's prohibition against sex discrimination extends to discrimination based on sexual orientation. 140 S. Ct. at 1754.

Plaintiffs can support intentional discrimination claims under Title VII using either direct or indirect evidence. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). Direct evidence consists of facts that, "if believed, require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tennial v. UPS*, 840 F.3d 292, 302 (6th Cir. 2016) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). On the other hand, circumstantial, or indirect, evidence is "proof that does not on its face establish discriminatory animus," but allows a factfinder to draw a "reasonable inference that discrimination occurred." *Ondricko*, 689 F.3d at 649 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). In evaluating indirect evidence, this Court follows the *McDonnell Douglas* burden-shifting framework. *Miles*, 946 F.3d at 887 (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006)). Under this framework, the plaintiff has the burden of showing a prima facie discrimination case, after which the burden shifts to the defendant to offer a non-pretextual reason for the adverse employment action. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016). A prima facia case requires a showing that the plaintiff (1) was a "member of a protected group," (2) "was subjected to an adverse employment decision," (3) "was qualified for the position," and (4)

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

"similarly situated non-protected employees were treated more favorably." *Id.* (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Kilpatrick argues that he represents his own comparator because he was treated well before he came out as gay. Soon after that disclosure came the inquiry conducted by HCA and the subsequent termination. But we need not reach the comparator issue because even if Kilpatrick has pled a prima facie case, HCA has offered a valid non-discriminatory reason for his termination: altered educational documents. Thus, to prevail, Kilpatrick "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* at 779.

HCA asserts that, for two separately submitted reimbursement requests, "the course start dates and end dates on the two did not match, nor did the number of or the title of the courses that were listed." Appellee's Br. at 10. Kilpatrick responds that the university he attended did not have "official start stop date[s]." Appellant's Br. at 30. If this is true, it is unclear why dates were submitted to HCA and why they do not line up. Kilpatrick's submission of start and end dates to HCA contradicts his own assertion about the non-existence of these dates.

HCA also notes that Kilpatrick submitted a "computer screenshot of what he represented . . . was his course account statement from Middle Tennessee State University ('MTSU'). . . . In reality, Kilpatrick had submitted another student's account statement that was not his at all. What he provided was an edited picture of a friend's course account (whose true name had been removed from the document) that Kilpatrick had altered on his work computer using an application called 'Snipping Tool' to make the document appear as if it was his own." Appellee's Br. at 11–12 (citations omitted).

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

Kilpatrick responds that he submitted this account statement to "help HCA understand how Concordia was different" from other universities. Appellant's Br. at 7. Further, he used "liquid white out" to protect the student's privacy, so the edit was not "clandestine." *Id.* (emphasis in original). But on the email to which the MTSU screenshot was attached, Kilpatrick clearly stated that the screenshot was from his own account at MTSU. He offers no explanation of the use of Snipping Tool or why he represented the document was his own, or why liquid white out is a better method of changing documents than computer software.

Finally, HCA points out that HR manager Tina Norris, while reviewing Kilpatrick's email account, found "additional examples of altered education documents, where Kilpatrick had changed the tuition balance supposedly due on his student account and then forwarded a copy of that altered document to another employee." Appellee's Br. at 14. Kilpatrick asserts that these documents were "drafts" sent to another employee to "vet" the paperwork. Appellant's Br. at 30. He claims that the modification was to fix a $1000 miscalculation by the university—a fix that Concordia itself made. *Id.* But this reasoning does not explain why the documents before and after fixing are identical except for the amount charged, with the same receipt number. Further, Kilpatrick cites only to his own depositions, and we need not take as true these conclusory allegations.

Kilpatrick's explanations are insufficient to raise a genuine issue of material fact on pretext. Kilpatrick fails to rebut HCA's evidence of altered documents and even admits to some alterations. Further, it is not clear why a fair-minded jury would believe discharge based on this evidence is pretext given that submitting honest and accurate records is of high importance and that Kilpatrick offers no evidence of how these given reasons are a disguise for discrimination. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 284 (6th Cir. 2012) (citing *Bentley v. Orange Cnty., Fla.*,

6

445 F. App'x 306, 309–10 (11th Cir. 2011)) ("Fraud and dishonesty constitute lawful, non-retaliatory bases for termination."). His main argument is that the investigation and termination occurred after he came out. But given the documents HCA had before it when it made its decisions, Kilpatrick's allegations are insufficient for a factfinder to rule for him on his Title VII claim for discrimination based on sexual orientation.[1]

  B. Hostile Work Environment

To prevail on a hostile-work-environment claim under Title VII, the claimant must show that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of . . . employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). It is Kilpatrick's burden to show that

> (1) []he belonged to a protected group, (2) []he was subject to unwelcome [conduct], (3) the [conduct] was based on [sex], (4) the [conduct] was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the [conduct] and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)). We examine "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Occasional offensive utterances do not

---

[1] However, we do not go so far as to say that Kilpatrick committed fraud, as HCA seems to allege. *See* Appellee's Br. at 34. That HCA has presented a valid, non-discriminatory reason for termination is far from proving that the documents were falsified intentionally in order to deprive HCA of property. Moreover, Kilpatrick's official transcript corroborates his assertions that he did engage in a course of study at Concordia University.

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

rise to the level required to create a hostile work environment; "[t]o hold otherwise would risk changing Title VII into a 'code of workplace civility.'" *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2009).

In support of this claim, Kilpatrick points to the unwanted gifts and Bible verses, isolation from his peers at a new desk, and "baseless written discipline." Appellant's Br. at 32–33. He also points to his "employer's sudden obsession with rules." *Id.* at 33. While giving Kilpatrick pink nail polish, pink sunglasses, and bath bombs, and affixing allegedly hostile Bible verses to his desk could be seen as targeting his sexual orientation, these limited events do not meet the bar of "severe or pervasive." *Harris*, 510 U.S. at 21. For comparison, in *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000), we held that a hostile work environment was not created where a supervisor "placed a pack of cigarettes containing a lighter inside [plaintiff's] tank top and brassiere strap," and made inappropriate, sexually charged comments to her. *Id.* at 981; *see also Bowman*, 220 F.3d at 458–59, 465 (holding that a variety of incidents, some physically invasive, including a supervisor grabbing the plaintiff's buttocks and stating "she controlled [plaintiff's] ass and she would do whatever she wanted with it," were not severe or pervasive enough to create a hostile work environment). "Severe and pervasive" conduct requires much more. *See, e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (holding that constant lewd comments, winking, blowing kisses, touching and grabbing, and requests for sex collectively were sufficient for trial on hostile work environment claim); *Smith v. Rock-Tenn Servs.*, 813 F.3d 298, 310–11 (6th Cir. 2016) (same where plaintiff experienced slap and later a painful grab on the buttocks, and grabbing of the hips and "hunching," i.e., simulation of sex).

This caselaw sets a high bar to show a hostile work environment, a threshold that is not cleared by the actions alleged here. Nor does his relocation to the office corner matter, given that

No. 22-5307, *Kilpatrick v. HCA Human Resources, LLC*

Kilpatrick emailed a colleague that he "loved" the new seat location. Deposition of Montrell Kilpatrick, R.50-1, PageID 384–85. And while a disparate treatment through differential application of rules (the "baseless written discipline," i.e., the warning Kilpatrick's supervisor issued based on past errors) could supply indirect evidence of discrimination, it is not clearly connected with Kilpatrick's sexual orientation nor has Kilpatrick connected this discipline to "intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. We therefore hold that Kilpatrick's hostile-work-environment claim fails.

V.

In sum, Kilpatrick does not raise a genuine issue of material fact as to his discrimination and hostile-work-environment claims, and HCA is entitled to summary judgment as a matter of law. We therefore **AFFIRM** the judgment of the district court.